IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
    *Plaintiff*

    v.

JESSE JAMES ELDER
    *Defendant*

Criminal No. ELH-17-0384 and
Criminal No.: ELH-18-0408

**MEMORANDUM OPINION**

Jesse James Elder, who is now self-represented,[1] was convicted of two distinct offenses in two separate cases.  In particular, in case ELH-17-0384 ("Case I"), Elder pleaded guilty to conspiracy to distribute and possess with intent to distribute a fentanyl analogue, in violation of 21 U.S.C. § 846.  And, in case ELH-18-0408 ("Case II"), he pleaded guilty to conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a).  At a combined sentencing, the Court imposed concurrent sentences of 125 months of imprisonment.  *See* Case I, ECF 205; Case II, ECF 216.

Defendant has moved to reduce his sentence in both cases, pursuant to 18 U.S.C. § 352(c)(1)(A).  *See* Case I, ECF 210; Case II, ECF 228.  He also submitted several exhibits.  I shall refer to defendant's motions collectively as the "Motions."[2]  The government has filed a

---

[1] The Office of the Federal Public Defender has declined to represent the defendant.  *See* ELH-17-0384, ECF 213; ELH-18-0408, ECF 231.

[2] Elder's two motions are identical.  For convenience, I shall sometimes cite to only one motion.

combined opposition to the Motions.  *See* Case I, ECF 220; Case II, ECF 239 (collectively, the "Opposition").[3]

No hearing is necessary to resolve the Motions.  For the reasons that follow, I shall deny the Motions, without prejudice to defendant's right to renew them.

## I.  Factual and Procedural Background

### A.  Case I, ELH-17-0384

On July 19, 2017, a federal grand jury in the District of Maryland returned a 20-Count Indictment against four individuals, including the defendant.  Case I, ECF 18.[4]  Elder was charged with conspiracy to distribute and possess with the intent to distribute a fentanyl analogue, in violation of 21 U.S.C. § 846 (Count One); two counts of distribution of a fentanyl analogue, in violation of 21 U.S.C. § 841(a) (Counts Twelve and Fourteen); and possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g) (Count Eighteen).  *Id.* Defendant was detained from the date of his arrest on January 31, 2017 until March 1, 2017.  *See id.*, ECF 3, 4, 6, 7, 8.

Defendant entered a plea of guilty on February 21, 2018.  *Id.*, ECF 74.  The plea was tendered pursuant to a plea agreement.  *Id.*, ECF 75.  Under the plea agreement, defendant agreed to plead guilty to Count One, charging drug conspiracy.  *Id.* ¶ 1.

The plea agreement provided that, before applying three deductions for acceptance of responsibility under § 3E1.1 of the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines"), defendant had an offense level of 24, based on the drug quantity.  *Id.* ¶ 6(a).  However, it also

---

[3] Because the government filed identical oppositions in both cases, I shall generally cite to only one of them.

[4] Defendant was initially charged on January 23, 2017, by way of a criminal complaint. ECF 1.

stated that, if defendant were found to be a career offender under U.S.S.G. § 4B1.1(b)(1), his offense level would increase to 37, before deductions under § 3E1.1. In addition, under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentencing range. *Id.* ¶ 9. And, pending sentencing, defendant agreed, *inter alia*, not to violate any federal, state, or local law. *Id.* ¶ 12. If he were to do so, the government could be relieved of its obligations to defendant. *Id.*

The plea agreement contained a summary of the factual basis for the guilty plea. ECF 75-2. The parties stipulated that the government could prove, at a minimum, facts that were sufficient to establish that defendant conspired with three codefendants to sell controlled substances. *Id.* To illustrate, on January 20, 2017, defendant and a codefendant obtained over 100 grams of a fentanyl analogue from two other codefendants. Later that day, defendant and a codefendant drove to Pasadena, Maryland, where the codefendant supplied an undercover officer with approximately 121.5 grams of fentanyl, in exchange for $7,500. *Id.* Defendant agreed that in January 2017, he and his co-conspirators sold more than 100 grams of a fentanyl analogue. *Id.*

### B. Case II, ELH-18-0408

As noted, in Case I, the drug trafficking case, defendant was released from custody on March 1, 2017. *See* Case I, ECF 3, 4, 6, 7. Several months later, on January 16, 2018, while defendant was on pretrial release in Case I, he and two co-conspirators brutally robbed the owner of a gas station in Owings Mills, Maryland.[5]

On August 1, 2018, a federal grand jury returned a three-count Indictment against defendant and one of his coconspirators. *See* ELH-18-0408, ECF 1. The defendant was charged with conspiracy to commit Hobbs Act Robbery and with Hobbs Act Robbery, both in violation of

---

[5] Defendant's conduct in Case II clearly constituted a breach of his plea agreement in Case I. *See* Case I, ECF 75, ¶ 12. It also constituted a violation of his pretrial release conditions in Case I.

18 U.S.C. § 1951(a) (Counts One and Two), and with Commission of a Crime While on Release, in violation of 18 U.S.C. § 3147(1).  *Id.*  The defendant had his initial appearance on August 14, 2018.  *Id.*, ECF 7.  He was detained.  *Id.*, ECF 10.[6]

A Superseding Indictment was filed on August 14, 2019.  *Id.*, ECF 30.  It added a third defendant  to Case II, who was also charged with both Hobbs Act offenses.

Pursuant to a plea agreement (*id.*, ECF 38), Elder entered a plea of guilty on August 28, 2019 (ECF 37) to Count One of the Indictment in Case II, charging him with conspiracy to commit Hobbs Act Robbery.  *Id.*, ECF 38, ¶ 1.  In the plea agreement, the parties stipulated to an anticipated final offense level of 26 under the Guidelines.  *Id.*, ECF 38, ¶ 6.  But, in contrast to Case I, there was no agreement as to a particular sentence.

The plea agreement contained a summary of the factual basis for the guilty plea.  *Id.*, ECF 38 at 9.  The parties agreed that the government would prove that the defendant and two other individuals conspired to rob—and did rob—the owner of an Exxon gas station in Owings Mills, Maryland.  *Id.*  The defendant was "a frequent customer" at the gas station and "was friendly with" the owner.  *Id*.

On January 16, 2018, while Elder was distracting the owner of the gas station by speaking with him, his co-conspirators, who had been hiding, approached from another direction.  *Id.*  The co-conspirators charged the victim, "pushed him to the ground, and grabbed" a bag of cash from the victim, containing approximately $20,000 in proceeds of the business.  *Id.*  As a result of being pushed to the ground, the victim hit his head on the pavement and was "knocked unconscious."

---

[6] Defendant's pretrial release was also rescinded in Case I.  *See* ELH-17-0384, ECF 115, ECF 118.

*Id.* The victim suffered debilitating injuries, including multiple skull fractures and a cerebral hemorrhage. *Id.* As of that time, the victim still had not "returned to normal function." *Id.*[7]

Defendant's two co-conspirators fled in a car and, while fleeing, one of them dropped his shoes. DNA on the shoes matched the DNA of one of the assailants. *Id.* The police also recovered a .22 caliber handgun at the scene. *Id.*

## C. Sentencing

Sentencing in both cases was held on February 1, 2022. Case I, ECF 203; Case II, ECF 214. Defendant was 44 years of age at the time. *Id.*

With respect to the calculation of the Guidelines, the defendant had a final offense level in the drug trafficking case of 24. *See* Case I, ECF 204 (Amended Presentence Report or "PSR"), ¶ 33; Case II, ECF 215 (same), ¶¶ 28, 33.[8] In the Hobbs Act Robbery case—after applying the grouping and multiple count rules—Elder had an adjusted offense level of 30, prior to receiving a 3-level downward adjustment under U.S.S.G. § 3E1.1 for his acceptance of responsibility. Case I, ECF 204, ¶¶ 34-43, Case II, ECF 215, ¶¶ 39-43. As a result, defendant had a final offense level of 27 for that offense.

Elder had a criminal history category of IV. Case I, ECF 204, ¶ 56; Case II, ECF 215, ¶ 56. Specifically, he had a total of nine criminal history points—seven for prior convictions and two for committing the underlying offense while on supervision in the State of Maryland for robbery.

---

[7] To my knowledge, the victim, who was critically injured, never fully recovered.

[8] The Amended Presentence Reports are identical.

Case I, ECF 204, ¶¶ 54-56; Case II, ECF 215, ¶¶ 54-56.[9]  Defendant's prior convictions included convictions for robbery in 2010 and 2012.  *Id.* ¶¶ 50, 51, 52, 53.

Based on a final offense level of 27 and a Criminal History Category of IV, the advisory Guidelines range called for a sentence in the Hobbs Act case (Case II), ranging from 100 to 125 months of imprisonment.  The drug trafficking case (Case I) exposed defendant to a mandatory minimum term of ten years of imprisonment, with a maximum of life imprisonment.

For the reasons stated at sentencing, the Court imposed concurrent sentences of 125 months of incarceration.  *See* Case I, ECF 205; Case II, ECF 216.

## II.  Legal Standard

In both Case I and Case II, Elder seeks a time-served sentence because of his mother's "deteriorating health," coupled with the fact that he has served about half his sentence and because of "his Good Behavior . . . ."  ECF 228 at 1.

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Davis*, 99 F.4th 647, 653 (4th Cir. Apr. 18, 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."

---

[9] Under the Guidelines amendments that went into effect in November 2023, defendant would have eight criminal history points.  But, this still equates to a Criminal History Category of IV.

*Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction."  *Hargrove*, 30 F.4th at 194; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . .").

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion by the Director of the Bureau of Prisons ("BOP").  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See Bethea*, 54 F.4th at 831; *see*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

For many years, the BOP rarely filed such a motion on an inmate's behalf.  As a result, compassionate release was an infrequent occurrence.  *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

However, with the passage of the First Step Act ("FSA") in 2018, *see* Pub. L. No. 115-391,

132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582, *Malone*, 57 F.4th at 173, by enabling a federal inmate to file a motion for compassionate release directly with the court, as long as the inmate first exhausted administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020). In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.

Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually has two parts. The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, ___ U.S. ___, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step. Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18

U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189. As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54.

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of*

*Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added).  Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."  Therefore, on the basis of that earlier text, the Court held:  "When a defendant exercises his . . . right to move for compassionate release on his own behalf, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts."  As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'"  *Id.* at 284 (citation omitted).

However, effective November 1, 2023, U.S.S.G. § 1B1.13 was amended.  *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)).  The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."  U.S.S.G. § 1B1.13 (2023) (emphasis added).  Therefore, the Policy Statement is now applicable to defendant-filed motions under § 3582(c)(1)(A).  *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction").[10]  As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

---

[10]  Defendant's Motion was filed on November 1, 2023, the effective date of the amendments.

(B) In General.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

    (1) (A) extraordinary and compelling reasons warrant the reduction; or

    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

    (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3) the reduction is consistent with this policy statement.

The Policy Statement identifies six circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *Id.* § 1B1.13(b)(1)– (6). These include certain medical circumstances of the defendant, such as terminal illness, "serious cognitive impairment," the inability to receive specialized medical care while incarcerated, or the housing of the defendant at a correctional facility affected or at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", *id.* § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, *id.* § 1B1.13(b)(2); the defendant's family circumstances, *id.* § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, *id.* § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstances or combination of

circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "Limitation on Changes in Law." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[11]

Section 1B1.13(d) of the Policy Statement, which concerns rehabilitation, limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. It provides that, "[p]ursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with

---

[11] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.*

Even if a defendant establishes that extraordinary and compelling reasons warrant relief, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the recent amendments to the Guidelines did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and

'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).  As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500).  The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021).  And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said:  "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis."  But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).  In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190).  And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir.

2021).  For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'"  *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).  In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case."  *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190).  And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law.  *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.").  In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . . " *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is illustrative.  The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6).  *Id.* at 654, 655.  And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range."  *Id.* at 661.  According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison."  *Id.*  The Court stated, *id.*:  "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"  *Id.* (quoting 18 U.S.C. § 3553(a)(6)).  The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis,

because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (*citing Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III. Discussion

The defendant has moved for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), asking the Court to order his immediate release. Case I, ECF 210; Case II, ECF 228. In support of his Motions, the defendant argues that his mother's deteriorating health, coupled with her need for a caretaker, constitutes an extraordinary and compelling reason for compassionate release. Defendant also notes that he has served more than half of his 125-month sentence, that he has not acquired any disciplinary infractions while incarcerated, that he has a proposed reentry plan for his release, and that he has successfully completed several programs while in BOP custody. *Id.* at 3-4.

The defendant has submitted several exhibits. These include his re-entry plan (Case II, ECF 228 at 4); his request for compassionate release to the Warden (*id.*, ECF 228-2); the Warden's denial of his request (*id.*, ECF 228-3);[12] a letter from defendant's mother, dated May 25, 2023 (*id.*, ECF 230), with attachments, including information about her medical condition. *Id.*, ECF 230 at 12, 18-25. The Court has also received a letter from defendant. *Id.*, ECF 230 at 8-9. And, defendant has submitted a character letter. *Id.*, ECF 230 at 15.

Defendant's mother is now 72 years of age. Case II, ECF 228 at 3. The defendant asserts that in April 2023, she had heart surgery and that "the left side of her heart doesn't work anymore . . . ." *Id.* Moreover, Elder asserts that his mother "has a host of other health issues," including kidney disease, and that "[s]he is unable to care for herself . . . ." *Id.*

---

[12] The government does not dispute that defendant has satisfied the requirement for exhaustion.

16

Defendant submitted a letter from a "CRNP" at MedStar Cardiology Associates, dated May 23, 2023. ECF 230 at 18-19.[13] The CRNP states that defendant's mother has had multiple hospitalizations for serious cardiac issues, including heart failure. *Id.* The CRNP also notes that this is "a progressive disease." *Id.* at 18. According to a Patient Case Summary for defendant's mother from Annapolis Internal Medicine, LLC, dated April 18, 2023, her medical diagnoses include "Systolic heart failure," "Paroxysmal atrial fibrillation," chronic kidney disease stage 3, and pulmonary hypertension. *Id.* at 20.

Neither defendant nor his mother explain the care she needs. Moreover, there is no evidence that defendant is the only person available to assist his mother. *See id.*, ECF 230 at 6-7.

In defendant's letter to the Court, he expresses remorse for his conduct. *Id.*, ECF 230 at 8-9. He also states, *id.* at 9: "So again I Thank You For Saving me . . . ."

The government contends that defendant has not demonstrated an extraordinary and compelling reason for compassionate release. Case I, ECF 220 at 7, 12. As to the medical condition of defendant's mother, the government asserts that defendant "has not offered any evidentiary support for this claim." *Id.* at 12. I disagree. Alternatively, the government contends that, even if defendant meets "the threshold requirements" for compassionate release, the sentencing factors under 18 U.S.C. § 3553(a) do not support a sentence reduction. *Id.*

It is significant that defendant filed the Motions on May 27, 2023. *See* Case I, ECF 210; Case II, ECF 228. The Opposition was filed on September 22, 2023. Case I, ECF 220; Case II, ECF 239. When the Motions and the Opposition were filed, the Guidelines did not include a provision for compassionate release based on the health needs of a defendant's parent. Thus, the government cited several cases where courts had denied compassionate release based on the health

---

[13] "CRNP" is an abbreviation for Certified Registered Nurse Practitioner.

condition of a parent.  *See*, *e.g.*, *United States v. Tate*, 16-CR-74, 2022 WL 827256, at *2 (W.D.N.C. Mar. 18, 2022) (explaining that the defendant's desire to provide care for his mother "falls short of the guideposts" provided by U.S.S.G. § 1B1.13 cmt. n.1(C)); *United States v. Ingram*, GJH-15-392, 2020 WL 3183698, at *2 (D. Md. June 15, 2020) (denying motion for compassionate release based on the defendant's desire to care for his mother, who was nearing 60 years old and had risk factors for COVID-19, and explaining that "the Court's research suggest that a parent's health is not an 'extraordinary and compelling' reason under 18 U.S.C. § 3582(c)(1)(A)"); *United States v. Ingram*, 14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (stating that "many, if not all inmates, have aging and sick parents.  Such circumstance is not extraordinary.").

But, of critical import here, effective November 2023, the Guidelines were amended.  Of relevance, U.S.S.G. § 1B1.13(b)(3) was modified by Amendment 814.  As the United States Sentencing Commission explains:

> First, this modification expands the existing provision relating to the death or incapacitation of the caregiver of a defendant's minor child to include a child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. Second, the modification adds a new provision for cases in which a defendant's parent is incapacitated. Finally, the modification adds a second new provision that applies when similar circumstances exist with respect to a person whose relationship with the defendant is similar in kind to that of an immediate family member.

United States Sentencing Commission, *2023 Amendments in Brief*, at 2, https://perma.cc/6MGU-7SZQ.

Under the current version of the Guidelines, which went into effect after defendant filed the Motions, U.S.S.G. § 1B1.13(b) sets forth various grounds for extraordinary and compelling reasons for compassionate release.  Section 1B1.13(b)(3) is pertinent.  It is titled "FAMILY CIRCUMSTANCES OF THE DEFENDANT."  In § 1B1.13(b)(3)(C), it states: "The incapacitation of the

defendant's parent when the defendant would be the only available caregiver for the parent."  This language was only added a few months ago.

Nonetheless, from the information provided by defendant, it is not entirely clear that his mother is incapacitated.  But, even assuming that defendant's mother is incapacitated, defendant has not presented any evidence that he is the only available caregiver.  *See United States v. Henry*, Case 13-cr-91, 2020 WL 3791849, at *4 (E.D.N.Y. July 6, 2020) ("Even if the Court were to consider Henry's care for his parents as a family circumstance, Henry is not the only available caregiver – a home health aide provides daily care for Henry's parents.").  Simply put, defendant has not met the criteria for compassionate release on this ground.

I also agree with the government that Elder's additional grounds for compassionate release do not constitute extraordinary and compelling circumstances.  *Id.* at 16.  Specifically, defendant argues that he has served more than half of his 125-month sentence, that he has not obtained any disciplinary infractions while incarcerated, that he has a proposed reentry plan for his release, and that he has successfully completed several programs while in BOP custody.

I applaud defendant's progress towards rehabilitation.  Some of his accomplishments may be considered if there is a ground for compassionate release.  But, these achievements, by themselves, do not establish extraordinary and compelling circumstances for compassionate release.

As discussed earlier, a court considers whether release is appropriate under 18 U.S.C. § 3553(a) only if it first finds that extraordinary and compelling reasons warrant a sentence reduction.  *See Malone*, 57 F.4th at 173; *see, e.g.*, *United States v. Alexander*, 14-126, 2020 WL 2468773, at *3 (M.D. La. May 13, 2020) (concluding that the defendant's "efforts at rehabilitation . . . are only relevant if he demonstrates an 'extraordinary and compelling' reason

for release"); *see*, *e.g., United States v. Abascal*, 13-CR-2424, 2020 WL 3265243, at *2 (D.N.M. June 17, 2020) ("The 'extraordinary and compelling' circumstances Mr. Abascal lists in support of compassionate release include that he has served over 71% of his 120-month sentence, that he has an exemplary prison record and has completed all required programming and paid all fines and assessments, and that there is a 'high risk' of COVID-19 at his facility. These circumstances are not 'extraordinary or compelling' sufficient to justify compassionate release."); *United States v. May*, 18-CR-688, 2022 WL 255315, at *1 (S.D.N.Y. Jan. 26, 2022) (finding that the defendant's "lack of disciplinary infractions while incarcerated and the length of time served in custody do not establish extraordinary and compelling reasons"); *United States v. McKenzie*, 19-CR-0165, 2020 WL 3621231, at *2 (E.D. Tenn. July 2, 2020) ("As to Mr. McKenzie's first argument—his contention that he is entitled to compassionate release because he completed drug-education programs and is no longer dependent on drugs—the United States correctly points out that a defendant's rehabilitation cannot by itself justify compassionate release."); *United States v. Rogers*, 09CR100, 2020 WL 3423423, at *2 (S.D. Miss. June 22, 2020) (citing 28 U.S.C. § 994(t) and noting that "[w]hile Defendant indicates that she has made a concerted effort towards rehabilitation, this fact alone cannot constitute an extraordinary or compelling reason to warrant compassionate release").

### IV. Conclusion

The Guidelines, as recently amended, permit release on the ground that a parent is incapacitated, if the defendant is the only available caregiver.  However, the sentencing factors in 18 U.S.C. § 3553(a) must also support release.

On the record presently before the Court, I cannot find that defendant has met the criteria for compassionate release on this ground.  Therefore, I shall deny the Motions, without prejudice to defendant's right to renew them.

An Order follows.


Date:   August 13, 2024                              _____/s/_____
                                                     Ellen L. Hollander
                                                     United States District Judge